UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| 320 FALL RIVER, LLC; and H. CHARLES TAPALIAN<br>    *Plaintiffs*,<br><br>v.<br><br>THE TOWN OF SEEKONK, By and<br>Through its BOARD OF SELECTMEN;<br>MICHELLE A. HINES, In her capacity<br>as Chairperson of the Board of Selectmen;<br>DAVID ANDRADE; JOHN DOES 1-10;<br>and XYZ CORPORATIONS 1-10<br>    *Defendants*. | :<br>:<br>:<br>:<br>:   C.A. No.:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

<u>COMPLAINT</u>

Plaintiffs 320 Fall River, LLC ("320 Fall River") and H. Charles Tapalian ("Mr. Tapalian" or collectively with 320 Fall River, "Plaintiffs"), by and through its attorney, bring this action against the Town of Seekonk, through its Board of Selectmen and chairperson Michelle A. Hines, David Andrade, John Does 1-10, and XYZ Corporations 1-10 ("Defendants") seeing damages for deprivations of their Constitutional rights under 42 U.S.C. § 1983, including violations of their 1st, 5th, and 14th Amendment rights, as well as declaratory and injunctive relief, resulting from Defendants' bad faith and elaborate scheme to infringe Plaintiffs' property rights surrounding the purchase of real property in Seekonk, MA.

*The Parties*

1.     Plaintiff, 320 Fall River is a limited liability company organized and existing under the Laws of the State of Massachusetts with a principal office located at 44 Davis Street, Seekonk, MA 02771.

2.     Plaintiff, H. Charles Tapalian is a resident of Seekonk, Massachusetts and sole owner of 320 Fall River.

1

3.      Defendant, the Town of Seekonk ("Town"), by and through its Board of Selectmen ("Board") is a municipality and governmental body located at 100 Peck Street, Seekonk, MA 02771.

4.      Defendant, Michelle A. Hines (hereinafter "Ms. Hines") is the chairperson of the Board and is being sued in that capacity.

5.      Defendant, David Andrade (herein "Mr. Andrade"), upon information and belief, is a resident of 151 Allen Avenue, Seekonk, MA 02771 and former member on the Board from 2016 to 2022.

6.      Defendants, John Does 1-10, and XYZ Corporation(s) 1-10 are a person or persons whose identit(ies) is/are currently unknown to Plaintiffs yet who, upon information and belief, have aided, assisted, and/or conspired with the other above-named Defendant(s) with respect ti the Constitutionality and/or legally violative conduct described in this Complaint.

## *Jurisdiction and Venue*

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331; 28 U.S.C. 1367; and 42 U.S.C. 1983.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1931(b)(1) because Defendant(s) are a Massachusetts governmental entity and, pursuant to 28 U.S.C. 1931(b)(2), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this jurisdiction.

## *General Factual Allegations*

9.      320 Fall River owns real property located at 320 Fall River Avenue, Seekonk, MA; 763 Arcade Avenue, Seekonk, MA; and 769 Arcade Avenue, Seekonk, MA (Assessor's Map 14, Lots 78, 96, 100, 101) (the "Property").

2

10.     Historically, the Property has been classified as "recreational land" under G.L. c. 61B § 1 *et seq.*, for the operation of the Firefly Golf Course ("Firefly"). The last time Plaintiffs submitted an application for the 61B designation was September 21, 2021.

11.     However, since Firefly's permanent closure in 2019, 320 Fall River has sought different avenues to repurpose the land in accordance with Massachusetts law, and, in March of 2023, 320 Fall River sought to convert the Property's designation from G.L. c. 61B § 1 to G.L. c. 40B § 21 in an effort to develop low- or moderate-income housing.

12.     To further this effort, in the second half of 2022, 320 Fall River submitted a project application to the MassHousing ("MassHousing").

13.     Thereafter, on January 11, 2023, 320 Fall River notified the Town of its G.L. c. 40B submission to MassHousing for a Project Eligibility Letter.

14.     On February 9, 2023, individuals from MassHousing, together with Town officials, visited Firefly to conduct a project visit to evaluate its G.L. c. 40B proposal.

15.     Following this visit, on April 26, 2023, 320 Fall River submitted its full application to MassHousing, consisting of 280 townhouse units of which 70 units are affordable housing.

16.     And, on May 23, 2023, 320 Fall River received a site approval letter from MassHousing, which then allowed Plaintiffs to submit an application to the Town for a Comprehensive Permit.

17.     Pursuant to G.L. c. 61B § 9, the Town may exercise a right of first refusal or option to purchase the Property upon 320 Fall River's intended conversion under G.L. c. 40B § 21, which includes requirements for notice, appraisal, and public hearings, with specified timelines for responses and agreement execution.

18.     On August 29, 2024, the Town's Finance Committee ("Committee") commissioned the fair market appraisal of the Property, which provided an opinion of the market value of the Property on a "as is" basis, for the acquisition of the Property in accordance with G.L. c. 61B § 9.

19.     On November 4, 2024, the Town ultimately exercised its statutory right to purchase the Property under G.L. c. 61B § 9 by entering into a Purchase and Sale Agreement ("Agreement") with Plaintiffs', yet this action occurred only as part of a clear pattern of conduct showing that the Town and Board consistently violated the Plaintiffs' constitutional rights, revealing a deliberate agenda to undermine Plaintiffs' property rights through intentional and unlawful actions.

20.     The Town's retaliatory actions are the result of years of ill will and malicious targeting aimed at Mr. Tapalian due to his refusal to submit to the Town's fraud and masked agenda.

21.     In the Fall of 2022, during a meeting with Mr. Andrade and the Town Administrator, Mr. Tapalian was informed that approximately $16-17 million in Community Preservation Committee funds would be allocated solely to purchase Firefly, with the real intent to sweep in the Showcase Cinema property (owned by another entity controlled by Mr. Tapalian), which would be the Town's only way to access these funds; however, Mr. Tapalian objected as it constituted fraudulent conduct.

22.     Further, after the election and prior to being sworn in, Mr. Andrade solicited Mr. Tapalian to engage his company on a project that Mr. Tapalian was in the final stages of completing.  Mr. Tapalian indicated that he only needed mechanical, electrical, and plumbing design work which he was already quoted $65,000.00 to complete.

23.     Mr. Andrade, instead, insisted upon giving a presentation to Mr. Tapalian related to the entire building, and offered a price quote of $365,000.00 for Mr. Andrade's.  Mr. Tapalian declined the proposal, and thereafter Mr. Andrade's subsequent actions in his capacity as the

Chairman of the Board of Selectmen, were retaliatory, blocking Mr. Tapalian's various development proposals in response to the rejection of his financial request.

24.    Additionally, Mr. Tapalian's proposal to convert the Showcase Cinema in Seekonk into a cannabis growth facility was met with unprecedented opposition by the Town even though the proposal included a $7,000,000 annual payment to the Town.  The Town, led by the Chief of Police and the Board, orchestrated a targeted campaign involving coordinated calls, childcare services, and transportation to rally citizens to vote against the proposal.

25.    These actions taken by the Town were the first of its kind, reflecting a clear strategy to block the proposed cannabis growth facility and infringe upon the Plaintiffs' property rights.

26.    However, the Town's and Board's action did not stop there, in accordance with G.L. c. 61B § 9, on November 18, 2024, the Town conducted a Town Meeting to determine whether to Purchase the Property or to permit 320 Fall River's development plan to proceed.

27.    The Town Meeting plainly evidences the Town and Board's bad faith toward the Plaintiffs and their deliberate efforts to undermine the Plaintiffs' property rights in an attempt to obstruct the G.L. c. 40B development on the Property without any just cause.

28.    At the hearing, following the moderator's explanation of Plaintiff's proposal, a member from the Town's Finance Committee ("Committee") provided public comment.

29.    The member represented that the Committee recommended approval for the Town to exercise its right of first refusal to purchase the Property by a three to two vote.

30.    However, the member commented that the proposal "has been reviewed by MassHousing, which determined that the project generally meets eligibility requirements under G.L. c. 40B program."

31.     Despite the Committee member recognizing MassHousing eligibility determination, he nevertheless commented that, "acquiring [Firefly] would allow the Town to preserve the property and prevent the proposed development, which may significantly impact local infrastructure, housing, and community resources."

32.     Upon open discussion, Mr. Andrade, noting his time on the Board, provided comment that purchasing the Property in response to Plaintiffs' development proposal is a "defensive move", and, without factual support, stated further that Plaintiffs' proposed development would cause in influx of residents thus requiring the Town to construct an entirely new school at a value of $200 million.

33.     Importantly, following a question from a Seekonk resident about what the Town and Board's plan for the Property would be if it exercises its right of first refusal, the Town represented that "currently there is no plan for the Property . . . and the Board will continue to keep it open space until a project arises that meets the need . . ."

34.     Subsequently, a resident expressed deep concern about the Town's actions with regard to the Property, in that citizens are being asked to spend $7 million "to defend land from development, but have no use planned for it right now" despite the Town's need for new schooling and, noting that "the enrollment in the school systems has not changed significantly in years."

35.      Then, Ms. Hines provided comment that, "now this is a chance, and the only chance we're going to get to buy this Property . . . no we don't have significant plans right now for the Property . . . but think of the future . . . or of what's coming up if we don't buy this land."

36.     Again, Mr. Andrade provided comment that G.L. c. 40B programs can be done well, but provided "we have two instances in Town where its crammed 15 pounds of you know what in a five pound bag", which is a direct attack against Mr. Tapalian's Greenbrier I and II G.L. c. 40B

developments, demonstrating his further retaliatory scheme to urge citizens to vote for the Town to approve the purchase of the Property.

37.    The Plaintiffs have suffered significant damages and constitutional violations as a result of the Town and Board's concerted efforts to obstruct their development projects and undermine their property rights.

38.    The Town's actions, including the fraudulent allocation of Community Preservation Committee funds to Firefly and the retaliatory tactics employed by Mr. Andrade, demonstrate a clear pattern of bad faith.

39.    The Town's targeted campaign against Mr. Tapalian's cannabis growth facility proposal, coupled with the coordinated efforts to prevent his G.L. c. 40B developments, reflect a broader strategy to interfere with the Plaintiffs' ability to exercise their property rights.

40.    At the public hearing on November 18, 2024, the Town's deliberate actions to block the proposed development and its lack of any concrete plans for the Property further illustrate the Town's intention to deny the Plaintiffs their rightful use of their property.

41.    The Plaintiffs have suffered significant damages and constitutional violations due to the Defendants' concerted efforts to obstruct their development projects, including fraudulent fund allocations, retaliatory actions, and a clear pattern of blocking lawful use of their property, resulting in an unlawful taking and denial of their property rights under the United States Constitution and Constitution of the Commonwealth of Massachusetts.

42.    Consequently, Plaintiffs have incurred significant financial damages, including a ten month delay in development, increased construction costs of approximately $36,500 per unit for 280 units (represents a 10% projected cost increase on $365,000 construction cost per unit), and lost net monthly income, upon completion, of $225,000, all of which are directly tied to

Defendants' unlawful actions.  Each additional month increases the period of delay and thus the lost income.

<u>**COUNT I**</u>

<u>**Violation of 42 U.S.C. § 1983**</u>
<u>**Defendants Targeted and Retaliatory Actions Against Plaintiffs Amounts to an Unlawful Taking Under the Fifth Amendment, As Applied to the States and Local Governments Through the Due Process Clause of the Fourteenth Amendment**</u>

43.      Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 42 as if set forth in full herein.

44.      The Taking's Clause of the Fifth Amendment states that, "private property [shall not] be taken for public use, without just compensation"

45.      Article X of the Massachusetts Constitution states that "[e]ach individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws. He is obliged, consequently, to contribute his share to the expense of this protection; to give his personal service, or an equivalent, when necessary: but no part of the property of any individual can, with justice, be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people. In fine, the people of this commonwealth are not controllable by any other laws than those to which their constitutional representative body have given their consent. And whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor.

46.      By filing applications with MassHousing and the Town to develop the Property under G.L. c. 40B, Plaintiffs engaged in activities consistent with and protected by their right secured by the Fifth Amendment to the United States Constitution and Article X of Massachusetts Constitution.

47.     In retaliation of Plaintiffs' protection under the Fifth Amendment to the United States Constitution and Article X of Massachusetts Constitution, Defendants' maliciously and in bad faith sought to obstruct, hinder, delay and deny ability to utilize its Property by way of developing the project.

48.     As a result of the Defendants' bad faith and retaliatory actions set forth above, Plaintiffs' have sustained significant and irreparable harm.

49.     Accordingly, Plaintiffs respectfully request that the Court declare that the Defendants' actions violate the Fifth Amendment to the United States Constitution and Article X of Massachusetts Constitution, and award damages to Plaintiffs in an amount to be proven at trial in excess of $10,000,000.00.

## COUNT II

### Defendants' Targeted and Selective Enforcement Activity Against Plaintiffs Deprives Plaintiffs of Their Civil Rights in Violation of 42 U.S.C. § 1983

50.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 49 as if set forth in full herein.

51.     By undertaking a retaliatory scheme against Plaintiffs, Defendants have unlawfully and substantially deprived Plaintiffs of rights secured by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

52.     Defendants are "persons" under 42 U.S.C. § 1983 who have acted under color of state law to deprive Plaintiffs of rights secured by the United States Constitution and federal law.

53.     Plaintiffs have suffered significant harm as a result of Defendants' actions, said actions having been carried out with the explicit intent to force Plaintiffs to sell the Property in bad faith.

54.    Accordingly, Plaintiffs respectfully request that the Court declare that Defendants' actions have deprived Plaintiffs of their civil rights secured by the First and Fourteenth Amendments and 42 U.S.C. § 1983, and award damages to Plaintiffs in an amount to be proven at trial in excess of $10,000,000.00.

## COUNT III

### Violation of 42 U.S.C. § 1983
### First Amendment Retaliation – Right to Petition Pursuant to First Amendment to the United States Constitution and Constitution of the Commonwealth of Massachusetts

55. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 54 as if set forth in full herein.

56.    By filing applications with MassHousing and the Town to develop the Property under G.L. c. 40B, Plaintiffs' engaged in activities consistent with and protected by their right secured by the First Amendment to the United States Constitution and Massachusetts Constitution.

57.    Defendants, as indicated *supra*, in making various public accusations of Plaintiffs' project and in taking other calculated actions designed to interfere with Mr. Tapalian's other developments, together with the Property, acted under color of state law.

58.    In retaliation of Plaintiffs' protection under the First Amendment to the United States Constitution and Article LXXVII of Massachusetts Constitution, Defendants' maliciously and in bad faith sought to obstruct, hinder, delay and deny ability to utilize its Property by way of developing the project and to punish Plaintiffs.

59.    Plaintiffs have suffered significant harm as a result of Defendants' actions, said actions having been carried out with the explicit intent to force Plaintiffs to sell the Property in bad faith.

60.     Defendants retaliatory conduct was an effort to quell and/or chill the Plaintiffs'
present and future exercise of their First Amendment rights to petition the government.

61.     As a direct and proximate result of Defendants retaliatory conduct and the resultant
deprivation of Plaintiffs' constitutional rights secured by the First Amendment pursuant to 42
U.S.C. s 1983, Plaintiffs have been harmed and are accordingly entitled to compensatory,
presumed, exemplary, and/or punitive damages.

## COUNT IV

### Declaratory and/or Injunctive Relief pursuant to 28 U.S.C. § 2201 and G.L. c. 231A § 1 *et seq* – The Agreement is Void as a Matter of Law and the Defendants Actions Violate the United States Constitution and Constitution of the Commonwealth of Massachusetts.

62.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 61
as if set forth in full herein.

63.     The Defendants' actions have demonstrated a pattern of retaliatory action, bad faith,
and ill-will against Plaintiffs to secure the purchase of the Property under G.L. c. 61B § 9.

64.     As such, an actual controversy exists between Plaintiffs and Defendants concerning
the violation of Plaintiffs' property rights.

65.     As a direct and proximate result of the Defendants conduct, the Plaintiffs have
suffered significant damages and irreparable harm.

66.     Accordingly, Plaintiffs respectfully request that the Court declare that Defendants'
actions have deprived Plaintiffs of their rights secured by the United States and Massachusetts
Constitution, and that the Agreement is void as a matter of law.

## COUNT V

### Statutory Rescission pursuant to G.L. c. 30B § 17

67.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 66 as if set forth in full herein.

68.     Through their retaliatory actions, Defendants conspired to induce Plaintiffs into entering the Agreement with the sole intent of obstructing Plaintiffs' project on the Property, despite having no immediate plan to develop the land.

69.     This conduct violates G.L. c. 30B § 17, as Defendants acted in bad faith and infringed upon Plaintiffs' property rights, particularly regarding the development of G.L. c. 40B housing.

70.     As a direct result of Defendants' actions, Plaintiffs have suffered substantial harm, as the actions were intended to coerce Plaintiffs into selling the Property.

71.     Accordingly, Plaintiffs respectfully request that the Court rescind the Agreement and declare it void as a matter of law as it is in violation of G.L. c. 30B § 17, and was executed in bad faith as part of an unlawful retaliatory scheme against the Plaintiffs.

WHEREFORE, Plaintiffs, 320 Fall River, LLC, and Charles Tapalian demand judgment against Defendants, Town of Seekonk, through its Board of Selectmen and chairperson Michelle A. Hines, David Andrade, John Does 1-10, and XYZ Corporations 1-10 in an amount no less than $10,000,000.00, plus interest, costs, punitive damages, counsel fees, and any other relief this Honorable Court deems just and proper.

Respectfully submitted,

*/s/ Joseph P. Carnevale*_____
Joseph P. Carnevale, Esq. (BBO 687702)
Savage Law Partners, LLP
564 South Water Street
Providence, Rhode Island 02903
Tel: (401) 238-8500
Fax: (401) 648-6748
jcarnevale@savagelawpartners.com

*Attorney for Plaintiffs*
320 FALL RIVER, LLC, AND
H. CHARLES TAPALIAN

Dated: January 24, 2025